The Beck & Pauli Lithographing Co. vs. Nebraska City Cereal Mills.

THE BECK & PAULI LITHOGRAPHING COMPANY, Appellant, vs. NEBRASKA CITY CEREAL MILLS, Respondent.

*January 11 — February 1, 1901.*

*Contracts: Evidence.*

In an action to recover damages for breach of a contract to purchase show cards to be used as advertising matter, it appeared that, after some work upon the design for the cards had been done and approved, the defendant corporation had succeeded to the business of the partnership which had agreed to purchase the cards; that the president of the corporation, upon being shown the correspondence with the partnership and the sketches and proofs of the cards, stated to plaintiff's agent that not later than the next spring he would "take up the matter of the show card proposition and use them at that time;" and that plaintiff did nothing further on the cards until spring, when it opened up negotiations with defendant, but the latter then refused to recognize any liability to plaintiff. *Held*, that no contract between plaintiff and defendant was shown.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action for damages for breach of contract. The facts alleged for plaintiff's cause of action, omitting mere formal matters, are as follows: December 24, 1890, the firm of F. Byschlag & Son, composed of Theodore and Frederick Byschlag, who were engaged in manufacturing and dealing in cereal food products, received from plaintiff a written proposition relating to the purchase of stationery and advertising material, which was in the following words:

"Nebraska City, Neb., Dec. 24, 1890.
"*Nebraska City Cereal Mills.*

"Gents: We will submit sketch for new trademark for show card, and after sketches and finished proofs have been submitted we will furnish you 10 M. each of the different kinds of headings, viz., letter heads 8½x11, 8½x5½, note heads, bills; ½, ⅙, ⅓, ¼, business cards and 2 M. drafts. We will also submit sketch for a new hanger embodying trademark in col's, stationery to be made in three col's, viz., gold, red,

and black, stationery at $9.50 per M., show cards at 17½c. each, f. o. b. Milwaukee. Work all executed in firstclass style, and we will attend to the registration of trademark.

"Very truly,
"THE BECK & PAULI L. Co.,
"per C. J. Smith."

Such proposition was addressed to F. Byschlag & Son as the Cereal Mills Company, and was duly accepted in writing. The contract thus made was carried out as regards the stationery. The defendant corporation was subsequently formed to acquire and carry on the business of F. Byschlag & Co., and the object thereof was consummated, such corporation succeeding to all the business of the company and assuming and agreeing to carry out all of its existing contracts, including that with plaintiff. Prior to the said assumption a pencil design for the show-card hanger mentioned in the contract was made by plaintiff, submitted to F. Byschlag & Co., and approved by them. Thereafter further work was done in carrying out the contract by plaintiff preliminary to the work of printing the show-card hangers, such work being duly approved, no business in that regard, however, being done subsequent to the formation of the corporation. On August 22, 1895, and after the formation of the corporation, it was mutually agreed between plaintiff and defendant that the obligation of the contract on the part of F. Byschlag & Co. should be carried out by defendant, with the understanding, however, that it should not be required to take the show cards till the winter of 1895–96. Thereafter defendant refused to recognize liability under such contract, to plaintiff's damage in the sum of $1,032.

The defendant answered by a general denial.

On the trial there was a failure of evidence tending to show an agreement between F. Byschlag & Co. and defendant obligating the latter to carry out the contract with plaintiff. The only evidence relied on to show that there was such an agreement made between plaintiff and defend-

ant was that of plaintiff's agent, who testified that he interviewed Frederick Byschlag, president of defendant, on the subject; that such president was the father of the Byschlag who acted for the firm at the time the contract was made with it; that the son was dead; that on such occasion the agent had with him the correspondence that had passed between plaintiff and F. Byschlag & Co., and the sketches and proofs that had been submitted and approved as aforesaid; that the correspondence and approved work were exhibited to the president; that he acknowledged the genuineness of his son's signature to the contract, but said that defendant must use up the advertising material on hand before it went further in that line; that not later than the next spring he would "*take up the matter of the show-card proposition and use them at that time.*" There was no evidence that plaintiff did anything thereafter, towards getting out the show cards ready for delivery, on the faith of a contract with defendant. The evidence shows that, before the time came for further negotiations between the parties in accordance with Mr. Frederick Byschlag's suggestion that the matter would be taken up not later than the following spring, he died; that his successor in the management of defendant's affairs refused to recognize any liability of it to plaintiff. There was undisputed evidence as to the amount of plaintiff's recoverable damages if defendant is bound as alleged.

The jury found specially that at the time of the interview between plaintiff's agent and Frederick Byschlag, the latter did not, on behalf of defendant, assume and agree to carry out the contract of F. Byschlag & Co. Judgment was thereupon entered in defendant's favor, and plaintiff appealed.

For the appellant there was a brief by *Tarrant, Kronshage, McGovern & Dielmann,* and oral argument by *W. D. Tarrant.*

For the respondent there was a brief by *A. G. Weissert,* attorney, and *Frank B. Van Valkenburgh,* of counsel, and oral argument by *Mr. Van Valkenburgh.*

68      SUPREME COURT OF WISCONSIN.      [109

The Beck & Pauli Lithographing Co. vs. Nebraska City Cereal Mills.

MARSHALL, J.   As we view the case it is needless to consider the numerous errors assigned by appellant's counsel. It is conceded by them that defendant is not liable unless it assumed and agreed to carry out the contract made with F. Byschlag & Son.   There was no pretense on the oral argument that there is any evidence to that effect unless it be that of plaintiff's agent to the effect that defendant's president said to the former that not later than the coming spring he would "*take up the subject of the show-card proposition and use them at that time,*" referring, evidently, to the designs for the show cards that were present when the statement was made.   We are unable to discover anything in that evidence to indicate the making of a contract. It shows clearly that Frederick Byschlag did not intend to even discuss, at the time of the interview, the subject of making a contract.   The words upon which appellant's counsel rely, "use them at that time," plainly did not mean use the show cards, but use the designs and approved sketches which the agent had exhibited in considering the subject of adopting the method of advertising contemplated by the old show-card contract, and making a new contract to that end. That seems to be the only sensible meaning of what was said to plaintiff's agent, and, so far as appears, plaintiff so understood it.   There is nothing in the evidence as to what occurred after the interview, to create even a suspicion that plaintiff supposed it was to go on and get out the advertising material ready for delivery to defendant not later than spring.   On the contrary, its attitude was that of waiting till spring to further negotiate in regard to making a contract with defendant, in accordance with the fair meaning of the language used to plaintiff's agent.   At the close of the evidence the court should have dismissed the action because of an entire failure of proof of facts sufficient to charge defendant.

*By the Court.*— The judgment is affirmed.